UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| STANLEY L. BAUGHMAN, | ) | |
| (Social Security No. XXX-XX-2916), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:10-cv-104-WGH-RLY |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION AND ORDER

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 9) and an Order of Reference entered by Chief Judge Richard L. Young on November 16, 2010 (Docket No. 12).

## I. Statement of the Case

Plaintiff, Stanley L. Baughman, Jr., seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act"). 42 U.S.C. § 1381(a); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3).

Plaintiff applied for SSI on October 13, 2006, alleging disability since June 1, 1985. (R. 141-43). The agency denied Plaintiff's application both initially and on reconsideration. (R. 115-17, 120-23). Plaintiff appeared and testified at a hearing before Administrative Law Judge Rienhardt Korte ("ALJ") on July 1, 2009. (R. 395-436). Also testifying was a vocational expert ("VE") and two medical experts ("ME"). (R. 395). On July 21, 2009, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 44-51). The Appeals Council granted Plaintiff's request for review and remanded the case for a new hearing. (R. 89-91).

After remand from the Appeals Council, Plaintiff appeared and testified at a second hearing before ALJ Korte on February 2, 2010, as well as a supplemental hearing on April 13, 2010. (R. 356-66, 367-94). Also testifying was a VE and two MEs. (R. 356, 367). On May 18, 2010, the ALJ issued his opinion again finding that Plaintiff was not disabled because he retained the RFC to perform a significant number of jobs in the regional economy. (R. 28-39). The Appeals Council this time denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 3-5). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on September 13, 2010, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Plaintiff was 53 years old at the time of the ALJ's decision and had a limited education. (R. 38). Plaintiff had no past relevant work experience. (R. 38).

### B. Medical Evidence

#### 1. Plaintiff's Mental Impairments[1]

The record contains Plaintiff's school records, including the results of IQ testing in October 1968, 1969, 1970, and 1971. (R. 315-18). Verbal IQ scores were 61, 71, 66, and 62; non-verbal IQ scores were 90, 95, 92, and 89; and full-scale IQ scores were 76, 83, 79, and 76. (R. 317). School records indicate that Plaintiff completed at least one semester of seventh grade with grades ranging from B to D; there is no evidence that he was in special education classes. (R. 316).

Plaintiff underwent a psychological evaluation on November 9, 2006, with Kimberly Green, Ph.D. (R. 226-28). He attended the appointment alone and reported all personal information "readily and accurately. " (R. 226). Plaintiff reported hitting his head in a car accident as a child and that he had visual and memory problems ever since. Plaintiff reported quitting school in sixth grade because he was told he was "slow" and because his alcoholic father could not get

---

[1]As Plaintiff only challenges the ALJ's decision that his mental impairment did not meet Listing 12.05 for mental retardation, Plaintiff's physical impairments are not relevant to the court's analysis, and we need not list the medical evidence concerning those physical impairments in detail here.

him to school.  He never held a steady job; he performed odd jobs and took care of his parents and grandparents before they died.  (R. 226).  He reported living alone, raising rabbits, and doing all of his own chores, cooking, and laundry; he did not drive due to poor vision; he was married in the past for five years and had two children.  (R. 228).  Plaintiff was cooperative throughout the evaluation; he obtained a full-scale IQ score of 69, which Dr. Green indicated was in the "borderline range of intelligence"; she opined that his adaptive functioning was commensurate with borderline intelligence.  (R. 227-28).  Plaintiff "had no difficulty following directions and comprehending requests made of him," and he "needed to have very few questions repeated."  (R. 228).  Dr. Green diagnosed borderline intellectual functioning and assigned a GAF score of 50.  (R. 228).

On January 22, 2008, Plaintiff underwent a mental status examination with Jill Christopher, Psy.D.  (R. 309-13).  Plaintiff reported that he basically raised his three younger sisters while his parents worked and sustained a head injury in a car accident when he was 17; he alleged nightmares relating to several traumatic events and memory problems since his car accident.  (R. 309).  Despite evidence in the record to the contrary, Plaintiff told Dr. Christopher that he did not go past the fourth grade in school, and he was unable to read or write.  (R. 310).  Plaintiff reported working odd jobs approximately 30 hours per week to obtain food stamps.  (R. 310).  Plaintiff exhibited a limited vocabulary and obtained a verbal IQ score of 57, a performance IQ score of 65, and a full-scale IQ score of 57; Dr. Christopher opined that Plaintiff's profile was consistent

with a diagnosis of mild mental retardation, and she assigned a GAF score of 32. (R. 312-13).

Plaintiff underwent a biopsychosocial assessment on December 17, 2009, with clinical psychologist Andrew O'Neall, Psy.D. (R. 344-45). Plaintiff reported symptoms of post traumatic stress disorder due to multiple events, including being severely physically abused by his father as a child, being involved in a car accident, and being stabbed. (R. 344). Dr. O'Neall noted that Plaintiff appeared to "suffer from learning disabilities in reading and other academic subjects," but that "his adaptive ability with his many hardships" spoke to his "strong ability to function amidst adversity." (R. 345). Dr. O'Neall diagnosed post traumatic stress disorder and learning disorder and assigned a GAF score of 55. (R. 345).

On January 19, 2010, Plaintiff underwent a psychiatric evaluation with Judith Goodwin, MSN. (R. 349-52). Plaintiff complained of disrupted sleep and nightmares. (R. 349). Plaintiff reported completing school through approximately sixth grade but that he could not read or write; he lived alone and reported that he rarely saw his adult children. (R. 350). Plaintiff also reported a long history of alcohol abuse and that he last used marijuana one month prior. (R. 351). Plaintiff exhibited an adequate attention span during the examination and thought processes were logical and sequential; Plaintiff was well oriented with poor insight. (R. 351). Goodwin assessed his intelligence as likely in the low average range based on his verbal skills and fund of information. (R. 351).

She diagnosed Plaintiff with post traumatic stress disorder and assigned a GAF score of 45.  (R. 352).

Jack Thomas, M.D., testified at Plaintiff's hearing on February 2, 2010, as a medical expert.  (R. 379-86).  He indicated that his review of the record suggested that Plaintiff's low IQ scores were best assessed under Listing 12.02, with post traumatic stress disorder being the primary diagnosis of record.  (R. 380).  He noted that there was one instance when Plaintiff had an IQ score of 57, but testified that an individual functioning at the level commensurate with such a score would typically need to be cared for or institutionalized.  (R. 381).  Dr. Thomas testified that Plaintiff's consistently low verbal IQ scores alongside much higher performance IQ scores suggested a learning disability in the verbal domain.  (R. 382).  Dr. Thomas opined that Plaintiff was moderately limited in his activities of daily living; his ability to engage in social functioning; and his ability to maintain concentration, persistence, or pace.  (R. 384).  He opined that Plaintiff could perform simple, repetitive tasks, and he should be limited to only occasional contact with the public and coworkers.  (R. 385).

### 2.  State Agency Review

In December 2006, F. Kladder, Ph.D., a state agency psychologist, reviewed the record and completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment determining that Plaintiff did not have a listing-level mental impairment.  (R. 195-212).  He assessed Plaintiff's mental impairments under Listing 12.02 (organic mental disorders) and found that

Plaintiff's ability to live alone, raise rabbits for food, and do all his own chores and cooking supported a finding that he could complete simple repetitive tasks on a sustained basis. (R. 197). Plaintiff was mildly restricted in activities of daily living; moderately limited in his ability to maintain concentration, persistence, or pace; and markedly limited in ability to maintain social functioning. (R. 209). J. Larsen, Ph.D., affirmed Dr. Kladder's assessment in March 2007. (R. 197).

## III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

### V.  The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the application date.  (R. 30).  The ALJ continued by finding that,

in accordance with 20 C.F.R. § 404.1520, Plaintiff had four impairments that are classified as severe: borderline intellectual functioning; shoulder pain; osteoarthritis; and a disorder of the back. (R. 30). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 31). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 36-38). Consequently, the ALJ concluded that Plaintiff retained the RFC for medium work, except he: cannot reach above his shoulder level or lift objects above shoulder level with the left upper extremity; has limited ability to push/pull controls with the left upper extremity; is unable to climb ladders, ropes, or scaffolds and should avoid dangerous machinery; is limited to simple repetitive tasks; and is limited to only occasional contact with supervisors, coworkers, and the general public. (R. 34). The ALJ opined that Plaintiff had no past relevant work. (R. 38). However, Plaintiff retained the RFC to perform a significant number of jobs in the regional economy. (R. 38). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 39).

## VI. Issues

Plaintiff has essentially raised one issue. The issue is as follows:

**Whether Plaintiff's impairments meet Listing 12.05.**

Plaintiff's only argument is that the ALJ should have found that his mental impairments met Listing 12.05 in 20 C.F.R. Part 404, Subpart P, Appendix 1. That particular Listing provides as follows:

12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

Or

B.  A valid verbal, performance, or full scale IQ of 59 or less;

Or

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of
extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1.  In the introduction to Listing 12.00

for Mental Disorders, 20 C.F.R. Part 404, Subpart P, Appendix 1, further

provides that Listing 12.05 for Mental Retardation is different from the other

listings.  In order to meet Listing 12.05, an individual's impairment must first

satisfy the "diagnostic description" in 12.05's introductory paragraph and must

then meet one of the four sets of criteria listed in sections A, B, C, and D.  *Id.*  In

order for an individual to be disabled under a particular listing, his impairment

must meet each distinct element within the listing.  *Rice v. Barnhart,* 384 F.3d

363, 369 (7th Cir. 2004).  And, it is important to remember that, at step three,

the burden rests on Plaintiff to demonstrate that he meets the listing.

In this case, Plaintiff argues that the ALJ erred by concluding that there

must be evidence that establishes the diagnosis of mental retardation.  However,

the ALJ simply stated the correct standard for an individual to demonstrate that

his impairment meets Listing 12.05.  (R. 31).  The ALJ correctly restated the

requirement that Plaintiff must first meet the "diagnostic description" of the

introductory paragraph of 12.05 in order to meet the definition of mental

retardation required by Listing 12.05.  The Seventh Circuit has explained that

Listing 12.05 clearly requires findings of both "significantly subaverage

intellectual functioning" and deficits in adaptive functioning that both manifest

themselves prior to age 22.  *Novy v. Astrue,* 497 F.3d 708, 709-10 (7th Cir.

2007). "The requirements of early onset and the reference to the claimant's 'developmental period' seem intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Id.* at 709. Furthermore, the Seventh Circuit in *Novy* explained that the term "deficit in adaptive functioning" refers to an "inability to cope with the challenges of ordinary everyday life." *Novy,* 497 F.3d at 710.

In this case, the evidence reveals that Plaintiff obtained full scale IQ scores as a child of 76, 83, 79, and 76. (R. 317). These scores are in the borderline to low-average range. Additionally, Plaintiff's non-verbal IQ scores of 90, 95, 92, and 89 (R. 317) essentially fall in the average range. Therefore, the record lacks evidence of significantly subaverage intellectual functioning prior to age 22.

There is also no evidence that Plaintiff was in any special education classes growing up. And, while Plaintiff dropped out of school in the seventh grade, the evidence indicates that this was at least partially the result of an abusive father who did not take him to school and not because Plaintiff was suffering from mental retardation. Furthermore, Plaintiff told Dr. Christopher that as a child he basically raised his three younger sisters while his parents worked. (R. 309). The fact that Plaintiff was not in special education classes and that he practically raised his three little sisters does not indicate that he suffered (prior to age 22) the "inability to cope with the challenges of ordinary everyday life." *Novy,* 497 F.3d at 710. Consequently, Plaintiff has failed to carry his burden at step three of demonstrating that his mental impairment even met

the threshold "diagnostic description" necessary to meet Listing 12.05; he did not demonstrate significantly subaverage intellectual functioning and deficits in adaptive functioning that both manifest themselves prior to age 22. The ALJ's decision is, therefore, supported by substantial evidence and must be affirmed.

## VII.  Conclusion

The Commissioner's decision was supported by substantial evidence. Plaintiff's mental impairment did not meet Listing 12.05. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED** the 18th day of May, 2011.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copy to:**

Steven K. Robison
MONTGOMERY ELSNER & PARDIECK
srobison@meplegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov